[Doc. Nos. 66, 73]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

KEVIN JOHN WITASICK, SR.          :
AND WITNEY S. WITASICK,           :
                                  :
              Plaintiffs,          :
                                  :
        v.                        :      Civil No. 12-3474 (JHR/JS)
                                  :
MINNESOTA MUTUAL LIFE             :
INSURANCE CO., et al.,            :
                                  :
              Defendants.          :
_____:

REPORT AND RECOMMENDATION REGARDING
DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND DECISION
REGARDING PLAINTIFFS' MOTION TO STAY THE EXECUTION OF
<u>ANY AWARD OF FEES AND COSTS</u>

This matter is before the Court on defendant Standard Insurance Company's "Renewed Motion for Attorneys' Fees, Litigation Expenses, Expert Fees and Costs" [Doc. No. 66].[1] On November 17, 2014, the Court granted plaintiffs an extension of time until November 24, 2014 to file their opposition. [Doc. No. 72]. No opposition was filed by this date. However, on December 4, 2014, plaintiffs moved to stay the execution of any award for

_____

[1] Defendant previously applied for attorneys' fees [Doc. No. 42]. The Court denied defendant's motion as premature because three motions (<u>see</u> discussion, <u>infra</u>) were pending that could potentially moot the fee application and/or materially change the course of the case. <u>See</u> July 30, 2013 Order [Doc. No. 42]. Defendant's motion is now ripe for review.

1

attorneys' fees regarding the grant of summary judgment to defendant while their appeal is pending before the Third Circuit. [Doc. No. 73]. Contained within plaintiffs' motion to stay is their late opposition to defendant's fee petition.[2] Defendant filed its opposition to plaintiffs' motion to stay on December 22, 2014. [Doc. No. 75]. The Court exercises its discretion to decide defendant's motion for fees and plaintiffs' motion to stay without oral argument. See Fed. R. Civ. P. 78; L. Civ. R. 78.1.[3] For the reasons to be discussed, it is respectfully recommended that defendant's motion for attorneys' fees be GRANTED and that defendant be awarded fees ($117,321.50) and costs ($2,963.60) in the total amount of $120,285.10.[4] Additionally, because a final award of attorneys' fees has not yet been entered, the Court DENIES

---

[2] In the interests of justice the Court will consider plaintiffs' late filed papers.

[3] On January 2, 2015 [Doc. No. 76] plaintiffs requested another extension of time to file a reply to defendant's opposition to its motion to stay. As of this date the reply has still not been filed. The Court will not wait any longer for plaintiffs' reply. Plaintiffs had more than a reasonable opportunity to reply and therefore it is time for the Court to decide all outstanding motions. The Court also notes that the relevant issues have already been adequately briefed so it is doubtful plaintiffs' reply would have any material impact on its decision.

[4] The Court is issuing a Report and Recommendation pursuant to Fed. R. of Civ. P. 54(d) which authorizes a district judge to refer a motion for attorneys' fees to a magistrate judge pursuant to Rule 72(b) "as if it were a dispositive pretrial matter." This Report and Recommendation is subject to de novo review. 28 U.S.C. § 636(b)(1)(B) and (C).

plaintiffs' motion to stay execution of the judgment or award as premature.[5] The denial is without prejudice to plaintiffs' right to refile their motion if a final award of attorneys' fees and costs is entered.

**BACKGROUND**

In 1990, plaintiff Kevin Witasick purchased two insurance policies from Minnesota Mutual, a disability income policy and a business overhead expense policy. Compl. ¶ 5. Plaintiff alleges he was advised that in the event of his disability his business expenses would be paid under the policy regardless if they were also paid by his office. Compl. ¶ 8. In 2001, plaintiff was notified that defendant Standard would administer both policies. Compl. ¶ 12. In August 2001, Kevin Witasick's doctor determined that he was disabled from the practice of law and as a result he was placed on inactive disability status by the Arizona state bar. Compl. ¶ 13. Plaintiffs allege during the 23 ½ months in which

---

[5] The Court is in receipt of defendant's brief in support of its motion for fees [Doc. No. 66-1] (hereafter, "Def.'s Br."), defendant's statement in lieu of a reply brief [Doc. No. 68] (hereafter, "Def.'s Supp. Br."), plaintiffs' brief in support of its motion to stay [Doc. No. 73] (hereafter, "Pls.' Opp."), which incorporates an opposition to defendant's fee petition, and defendant's opposition to plaintiffs' motion to stay [Doc. No. 75] (hereafter, "Def.'s Reply Br."). The Court acknowledges that both parties have asked the Court to incorporate their prior briefs filed in response to the first motion for attorneys' fees [Doc. Nos. 42, 44, 46]. Defendant asks the Court not to consider plaintiffs' untimely opposition to its motion. See Def.'s Supp. Br. However, in the interests of justice, the Court will consider all of the referenced filings.

they received payment from Standard on the overhead expense policy they paid "substantial business bills out of the money received[.]" Compl. ¶ 18. In March 2003, Standard stopped paying benefits on both policies. Compl. ¶ 21. Plaintiffs assert after they hired an attorney, Standard resumed payment. Compl. ¶ 22. Approximately six months later, plaintiffs allege the payments stopped again. Compl. ¶ 24.

In dispute was whether business expenses paid by third parties were covered overhead expenses under plaintiffs' business overhead expense policy. Standard's position was that plaintiffs fraudulently submitted bills which were already paid while plaintiffs contended the expenses were covered by the policy. In August 2004, plaintiffs became aware that the Government was seeking an indictment for alleged mail fraud committed against Standard. Compl. ¶¶ 33-34. Plaintiffs alleged that Standard supported the issuance of an indictment so it would not be required to pay the remaining 1 ½ months of the overhead expense policy. Compl. ¶ 31.

In August 2006, plaintiffs' counsel made a settlement offer to Standard in exchange for a buy-out of both policies. Compl. ¶ 50. In September 2007, plaintiffs (represented by counsel) and Standard entered into a settlement agreement whereby Standard agreed to pay plaintiffs for the buyout of the disability income policy. Compl. ¶ 62. The settlement agreement contained a release

4

clause which "forever released[d] Minnesota Life and Standard . . . from any and all claims for benefits, claims for relief or causes of action, liens, demands, obligations, damages and liabilities, known or unknown, suspected or unsuspected, claimed or unclaimed, asserted or unasserted, related to or arising out of Mr. Witasick's entitlement or claimed entitlement to disability benefits under the IDI Policy and the BOE Policy." See Mar. 25, 2013 Mem. Op. and Order [Doc. No. 39] at 4-5 (quoting pertinent agreement language). Additionally, the agreement contained a covenant not to sue which barred the initiation of any action for any conduct "prior to the date the Parties sign this document [September 10, 2007], or which is related to, or arises out of, the IDI Policy, the IDI Claim, the BOE Policy, or the BOE Claim, or which has been released or waived by this Release." Id. Thereafter, plaintiff Kevin Witasick was acquitted of mail fraud. Compl. ¶ 83. In 2009, plaintiff was convicted of tax evasion, tax perjury, failure to file a tax return, and health care fraud, and subsequently sentenced to fifteen months imprisonment. United States v. Witasick, 443 Fed. Appx. 8838, 839 (4th Cir. 2011), cert. denied, 132 S. Ct. 1721 (2012).

Plaintiffs commenced this action on November 4, 2011 in the Superior Court of New Jersey asserting claims including malicious prosecution and civil conspiracy. See generally Compl. Defendants Minnesota Mutual and Standard removed the action to this Court on

5

June 8, 2012. [Doc. No. 1]. On August 28, 2012 defendants filed a motion to dismiss the complaint. [Doc. No. 16]. On March 25, 2013, the Honorable Joseph H. Rodriguez, S.U.S.D.J., granted defendants' motion. Judge Rodriguez found it "clear that the parties intended to settle all claims, known and unknown, regarding the two insurance policies discussed here." Mar. 25, 2013 Mem. Op. and Order at 9. Further, Judge Rodriguez found that the mutual release effectively caused plaintiffs to abandon all claims including those asserted in their complaint. Id. at 9.

Thereafter, plaintiffs filed a motion for reconsideration [Doc. No. 40] which was denied [Doc. No. 43]. On March 24, 2013, Standard filed its first motion for attorneys' fees. [Doc. No. 42]. On June 19, 2013, plaintiffs moved for a new trial. [Doc. No. 47]. On July 23, 2013, plaintiffs moved to amend the complaint [Doc. No. 54] which was denied [Doc. No. 67]. On July 30, 2013, this Court denied defendant's motion for attorneys' fees without prejudice finding the motion premature. [Doc. No. 56]. On January 16, 2014, Judge Rodriguez denied the motion for new trial. [Doc. No. 62]. On January 24, 2014, plaintiffs appealed to the Third Circuit.[6]

---

[6] Despite plaintiffs' appeal the Court has jurisdiction to decide defendant's fee petition. See In re Advanced Electronics, Inc., 283 Fed. Appx. 959, 963 (3d Cir. 2008) (citing Venen v. Sweet, 758 F.2d 117, 121 n.2 (3d Cir. 1985)) ("A district court, during the pendency of an appeal is not divested of jurisdiction to determine an application for attorney's fees".).

On February 14, 2014, Standard refiled its attorneys' fees motion [Doc. No. 66]. Standard argues that the award of attorneys' fees is mandatory under the terms of the parties' settlement agreement which states: "In the event of litigation between the Parties concerning the terms or enforcement of this Release, the Parties hereby agree that the prevailing party be awarded its reasonable attorneys' fees and costs incurred." Def.'s Br. at 4. Additionally, Standard argues that under Arizona law the trial court "lacks discretion" to deny a fee award mandated by a contract. Def.'s Br. at 4.[7] Standard claims that it has incurred attorneys' fees in the amount of $117,321.50 and costs in the amount of $2,963.60. Def.'s Br. at 6. In total, Standard claims $120,285.10 in attorneys' fees and costs. Plaintiffs oppose Standard's motion and alternatively request that execution of any judgment be stayed pending their appeal to the Third Circuit. See Pl.'s Br. at 2-4.

**DISCUSSION**

**1. Defendant's Motion for Fees**

As a preliminary matter, "[e]ven though attorneys' fees are generally considered procedural and federal courts apply federal

---

[7] Judge Rodriguez previously determined that Arizona law controls the interpretation of the settlement agreement. Witasick v. Minnesota Mut. Life Ins. Co., C.A. No. 12-3474, 2013 WL 1224450, at *4-5 (D.N.J. Mar. 25, 2013).

procedural rules rather than state procedural rules, in diversity cases, the Third Circuit has held that state procedural rules apply concerning attorneys' fees." Red Roof Franchising, LLC v. AA Hospitality Northshore, LLC, 877 F. Supp. 2d 140, 154 (D.N.J. 2012), recons. denied sub nom. Red Roof Franchising LLC, Inc. v. AA Hospitality Northshore, LLC, 937 F. Supp. 2d 537 (D.N.J. 2013), aff'd sub nom. Red Roof Franchising, LLC v. Patel, 564 Fed. Appx. 685 (3d Cir. 2014) (citing McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 775 n. 47 (3d Cir. 1990) (stating that "[s]tate rules concerning the award or denial of attorneys' fees are to be applied in cases where federal jurisdiction is based on diversity or if the court is exercising pendent jurisdiction, provided such rules do not run counter to federal statutes or policy considerations.")). Thus, the Court will apply Arizona law in recommending the amount of attorneys' fees to be awarded.

Under Arizona law, courts must generally enforce a contract provision for attorneys' fees according to its terms. Geller v. Lesk, 230 Ariz. 624, 627 (2012) (citing First Fed. Sav. & Loan Ass'n of Phoenix v. Ram, 135 Ariz. 178, 181 (App. 1982)). Courts may nonetheless limit such awards to a reasonable level. Id. Additionally, in this case, the parties contracted for an award of "**reasonable** attorneys' fees and costs incurred" to the prevailing party. Def.'s Br. at 4 (citing Settlement ¶ 18) (emphasis added).

The requirements for establishing the reasonableness of a fee

8

award arising out of a contract or agreement are set forth in Schweiger v. China Doll Rest., Inc. ("China Doll"), 138 Ariz. 183 (Ct. App. 1983). Under Arizona law, in determining whether a fee award is reasonable courts must consider: (1) whether the billing rate is reasonable and (2) whether the hours were reasonably expended. Id. at 187-88; Nucor Corp. v. Employers Ins. Co. of Wausau, C.A. No. 10-0174, 2012 WL 6117029, at *5 (Ariz. Ct. App. Nov. 23, 2012); Schrum v. Burlington N. Santa Fe Ry. Co., C.A. No. 04-0619, 2008 WL 2278137, at *5 (D. Ariz. May 30, 2008) ("Reasonableness has two parts. First, the court must determine the reasonableness of the hourly billing rate. Second, it must determine the reasonableness of the hours expended on the case.") (internal citations omitted).[8] Under Arizona law, once a prevailing party makes a prima facie showing that the fees requested are reasonable, "the burden shifts to the party opposing the fee

---

[8] Plaintiffs contend that the Court must consider a plethora of factors in determining whether defendant's application is reasonable. To the contrary, defendant need only submit a fee application consistent with the requirements of China Doll to establish its prima facie entitlement to reasonable fees. See McDowell Mountain Ranch Cmty. Ass'n, Inc. v. Simons, 216 Ariz. 266, 270-71 (Ct. App. 2007) ("[the prevailing party] submitted two fee applications consistent with the requirements set forth in Schweiger v. China Doll Restaurant, Inc., 138 Ariz. 183, 187-89, 673 P.2d 927, 931-33 (App.1983), thereby establishing its prima facie entitlement to fees in the amount requested."). Thereafter, the burden shifts to the opposing party to show the award is "clearly excessive." Id. If such a showing is not made, defendant is entitled to receive the full amount of fees requested. Id.

request to establish that the amount requested is clearly excessive." Geller, 230 Ariz. at 628 (citing McDowell Mountain, 216 Ariz. 266, 270-71 (App. 2007)). Once the reasonable hourly rate and reasonable number of hours expended are determined they are multiplied together to establish the presumptively reasonable fee award. Timmons v. City of Tucson, 171 Ariz. 350, 357 (Ct. App. 1991) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

**1. Billing Rate**

In determining whether a fee award is reasonable, courts begin the analysis by looking to the actual billing rate the lawyer charged. China Doll, 138 Ariz. at 187. As distinguished from public rights litigation, "in corporate and commercial litigation between fee-paying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case." Id. at 187-88; see also Albano v. Shea Homes Ltd. P'ship, C.A. No. 07-2359, 2012 WL 4513614, at *4 (D. Ariz. Oct. 1, 2012) (accord). While the court is not absolutely bound by this rate, in order to make an adjustment, the non-prevailing party must present an opposing affidavit explaining why the rate is unreasonable. Id. at 188. Plaintiffs have not challenged the reasonableness of defendant's hourly rates ranging from $200-250 dollars. Pls.' Opp. at 25. Thus, the Court will apply the rates requested.

10

**2. Hours Expended**

"Just as the agreed upon billing rate between the parties may be considered unreasonable, likewise, the amount of hours claimed may also be unreasonable." China Doll, 138 Ariz. at 188. In order to determine whether the claimed hours were reasonably expended, the prevailing party must submit affidavits indicating the type of legal services provided, the date of service, the attorney who provided the service and the time spent. Id. A party that submits a fee petition consistent with the requirements of China Doll establishes its prima facie entitlement to fees in the amount requested. McDowell Mountain Ranch Cmty. Ass'n, Inc. v. Simons, 216 Ariz. 266, 270-71 (Ct. App. 2007). Defendant has submitted billing records and affidavits which fully comply with these requirements and have thus established a prima facie entitlement to fees in the amount requested. See generally Def.'s Br., Ex. A. Therefore, the burden shifts to plaintiffs to show that the amount requested is excessive. See A. Miner Contracting, Inc. v. Toho-Tolani Cnty. Imp. Dist., 233 Ariz. 249, 261 (Ct. App. 2013), review denied (Mar. 21, 2014) ("Once a party establishes its entitlement to attorneys' fees, it is the burden of the party opposing the fees to show that an unreasonable amount of fees was requested.").

Plaintiffs make only generalized and conclusory objections to defendant's application. Plaintiffs' main arguments are that defendant engaged in duplicative and excessive billing and used

11

plaintiffs' case as a "billing opportunity". Pls.' Opp. at 4, 20. These general objections do not satisfy plaintiffs' burden. "Just as the applicant cannot submit a conclusory application, an opposing party does not meet his burden merely by asserting broad challenges to the application. It is not enough for an opposing party simply to state, for example, that the hours claimed are excessive and the rates submitted too high." State ex rel. Corbin v. Tocco, 173 Ariz. 587, 594 (Ct. App. 1992) (citing State of Arizona v. Maricopa County Medical Society, 578 F. Supp. 1262, 1264 (D. Ariz. 1984)).

Additionally, plaintiffs make six general objections to defendant's fee petition. These objections are similarly too broad and conclusory to make a successful challenge to defendant's fee petition. However, the Court will nevertheless consider them in turn.[9] Plaintiffs argue: (1) defendant should not be awarded fees for its notice of removal because it was discretionary and "there was no legitimate reason to move the case from state court to federal court"; (2) defendant should not be awarded fees for its motion to seal because it was discretionary and ultimately denied;

_____

[9] Plaintiffs also claim they are "entitled" to a hearing on the fee petition. The Court has discretion to determine whether a hearing is necessary. See Ariz. R. Civ. P. 54(g)(3) ("a hearing [on a motion for attorneys' fees] may be granted at the discretion of the court"); see also McDowell, 165 P.3d at ¶ 22 ("the court **may** conduct a hearing at the discretion of the court.") (emphasis added). The Court declines to do so.

(3) defendant's time expended on the motion to dismiss was grossly excessive; (4) defendant's award should be reduced because it engaged in block billing; (5) defendant should not recover travel time based on an Eastern District of Virginia case, SunTrust Mortgage, Inc. v. AIG United Guar. Corp., 933 F. Supp. 2d 762 (E.D. Va. 2013), which precludes such an award; and (6) plaintiffs do not have the ability to pay a substantial fee award. See generally Pls.' Opp.[10]

Plaintiffs' first and second contentions are without merit. A prevailing party awarded attorneys' fees "is entitled to recover a reasonable attorney's fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit[.]". China Doll, 138 Ariz. at 188 (citing Twin City Sportservice v. Charles O. Finley & Co., 676 F.2d 1291, 1313 (9th Cir.), cert. denied, 459 U.S. 1009 (1982)). Plaintiffs have not explained how defendant's decisions to file its motions were unreasonable or imprudent. Rather, the Court observes that both filings were in defendant's interest. Specifically, as defendant points out, it was obligated to file the motion to seal in order

---

[10] Additionally, plaintiffs ask the Court to consider the "forum rate rule" in determining the appropriate hourly rate for defendant's counsel. Pls.' Opp. at 27. However, since plaintiffs are "not disputing the reasonableness of the $250 hourly rate charged by [d]efendants' attorneys" (Pls.' Opp. at 25), the Court will not address this issue.

to comply with the confidentiality terms of the parties' settlement agreement. Def.'s Reply Br. at 18. Additionally, it is of no moment that defendant's motion to seal was ultimately denied because "Arizona courts have made clear . . . that 'where a party has accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories.'" Mardian Equip. Co. v. St. Paul Fire & Marine Ins. Co., C.A. No. 05-2729, 2007 WL 735552, at *3 (D. Ariz. Mar. 6, 2007) (citing China Doll, 138 Ariz. at 189)). Thus, it is respectfully recommended that the time expended on the notice of removal and the motion to seal should not be deducted from defendant's fee request.

Plaintiffs additionally argue it was excessive for defendant to bill a total of 95 hours to research and draft its motion to dismiss. Pls.' Opp. at 4, 18. In support of this contention plaintiffs have estimated how much time their former counsel would have expended in this litigation and have also given their personal opinions based on Mr. Witasick's experience as a retired lawyer. Id. These unsworn and unproven assertions are not evidence. Rudinsky v. Harris, 231 Ariz. 95, 102 (Ct. App. 2012) ("Unsworn and unproven assertions of counsel in memoranda are not facts admissible in evidence."). Furthermore, plaintiffs filed a 145-page complaint, containing 21 separate counts, and sought $200

14

million in damages.[11] Spending 95 hours in order to respond to such a complaint is not excessive.

Plaintiffs' argument that defendant engaged in block billing is also without merit. Plaintiffs have failed to point to a single instance of block billing.[12] Thus, the Court does not recommend reducing the fee request in response to a wholly unsupported allegation.

Plaintiffs argue defendant should not recover travel time based on the holding of an Eastern District of Virginia case, SunTrust Mortgage, Inc. v. AIG United Guar. Corp., 933 F. Supp. 2d 762 (E.D. Va. 2013). SunTrust Mortgage considered whether a case involving an insurance contract was so complex that it was reasonable for the party to seek specialized counsel outside the local market who charged a higher hourly rate. Id. The court determined that the same services were available locally and declined to apply the attorney's higher rates in fashioning a fee award. Id. at 773. Additionally, the court determined because the

---

[11] The Court notes the paradoxical nature of plaintiffs' argument that the hours claimed by defendant are excessive because the litigation involved a "single issue," yet plaintiffs filed a 145-page, 21-count complaint. Pls.' Opp. at 28.

[12] Plaintiffs' entire argument on this issue consists of two sentences: "Mr. Witasick attests there are multiple examples of this type of billing in the documents submitted to the Court by the [d]efendant's attorneys. As such, at minimum the entire fee award requested by the [d]efendant should be reduced by the same 20% figure used by the SunTrust Mor[t]gage Court, which in this case is a reduction of over $24,000.00." Pls.' Opp. at 30.

same legal services were available locally, the non-prevailing party should not be required to pay for the attorney's travel expenses. Id. at 776. This case is distinguishable. Plaintiffs are not challenging defendant's hourly rates and do not argue that defendant was required to obtain local counsel at a lower hourly rate. In order to determine that defendant is not entitled to be compensated for travel time, the Court would first have to determine whether specialized counsel was required. Since this argument was not presented, the Court cannot simply "skip a step" and determine that travel time is non-compensable. Thus, the comparison to SunTrust Mortgage is misplaced. Further, China Doll specifically lists travel time as an example of a compensable activity in determining an appropriate fee award. China Doll, 138 Ariz. at 188. Therefore, even if plaintiffs had pointed to specific travel time entries which they believe should be excluded, which they did not, the Court would still recommend permitting travel time in the fee application.

Additionally, plaintiffs urge the Court to consider its inability to pay a substantial fee award. As the party asserting undue hardship, plaintiffs have the burden of establishing prima facie evidence of financial hardship. Woerth v. City of Flagstaff, 167 Ariz. 412, 420 (Ct. App. 1990). Defendant argues that plaintiffs have failed to submit any affidavits, tax returns or financial documentation to support its "hardship" contention and

16

have thus failed to make a prima facie showing. Def.'s Reply Br. at 19-20.[13] The Court agrees. As in Woerth, the only support for plaintiffs' hardship contention are unsworn and unsupported assertions in memoranda filed with the Court. Woerth, 167 Ariz. at 420 (denying hardship contention); see also Rudinsky, 231 Ariz. at 103 (unsworn and unproven assertions in memoranda are insufficient to support a financial hardship argument). Thus, plaintiffs have not met their burden to assert a financial hardship.

Having carefully considered all of plaintiffs' arguments, the Court has not found one argument which successfully challenges the reasonableness of defendant's fee petition. See Nolan v. Starlight Pines Homeowners Ass'n, 216 Ariz. 482, 491 (Ct. App. 2007) (trial court did not abuse its discretion in awarding attorneys' fees where the opposing party did not present specific objections to the reasonableness of the fees requested and the prevailing party submitted affidavits which complied with the China Doll requirements for fee applications). Accordingly, the Court recommends awarding defendant the full amount requested, $120,285.10 in fees and costs. Additionally, the Court recommends that defendant be permitted to seek additional fees and costs, if any, that it incurred in connection with litigating its fee motion,

---

[13] Additionally, defendant points out that the $120,285.10 requested is approximately 0.06% of the $200 million in damages sought in plaintiffs' complaint. Def.'s Br. at 9.

17

defending plaintiffs' motion to stay, and defending plaintiffs' appeal to the Third Circuit. <u>See</u> <u>Gametech Int'l, Inc. v. Trend Gaming Sys., L.L.C.</u>, 380 F. Supp. 2d 1084, 1101 (D. Ariz. 2005) (citing <u>China Doll</u>, 138 Ariz. at 188) ("Arizona law supports the recovery of attorneys' fees incurred in preparing a fee application."); <u>China Doll</u>, 138 Ariz. at 188 ("post decision-motions" may be included in fee petitions).

### 3. Plaintiffs' Motion to Stay

Last, the Court considers plaintiffs' request to stay the enforcement of a monetary judgment pending their appeal to the Third Circuit, presumably pursuant to Fed. R. Civ. P. 62(d).[14] Rule 62(d) provides:

> If an appeal is taken, the appellant may obtain a stay by supersedeas bond ... [T]he bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond.

Because the Court is merely issuing a Report and Recommendation and not a final award or judgment, a determination as to whether a stay of execution is warranted at this juncture is premature. <u>See</u>, <u>e.g.</u>, <u>United States v. Hansel</u>, 182 F.R.D. 7 (N.D.N.Y. 1998) (motion to stay enforcement of the judgment was premature because a final judgment was not entered). Therefore, the Court declines

---

[14] Plaintiffs only specify that they are moving pursuant to "Rule 62." Pls.' Br. at 2-3.

to decide at this time whether a prospective award or judgment should be stayed.

**CONCLUSION**

Accordingly, for all the foregoing reasons, it is this 4th day of February, 2015, respectfully recommended that defendant's "Renewed Motion for Attorneys' Fees, Litigation Expenses, Expert Fees and Costs" [Doc. No. 66] be GRANTED. Because plaintiffs have not made any sucessful challenges to the reasonableness of defendant's fee request, it is respectfully recommended that defendant be awarded the full amount of fees ($117,321.50) and costs ($2,963.60) requested. This amount totals $120,285.10. The Court also recommends that defendant be permitted to update its claimed fees with additional fees and costs incurred in connection with litigating its fee motion, defending plaintiffs' motion to stay, and defending plaintiffs' appeal to the Third Circuit. Further, the Court finds that at this juncture plaintiffs' motion to stay execution of judgment [Doc. No. 73] is premature and will be denied without prejudice. A separate Order will be entered to this effect.

That parties are advised and reminded that pursuant to Fed. R. Civ. P. 72 and L. Civ. R. 72.1(c)(2), the parties have fourteen (14) days after being served with a copy of this Report and Recommendation to serve and file any objections.

As noted, this Report and Recommendation is only directed to defendant's Motion for Attorneys' Fees. A separate Order will be entered denying without prejudice plaintiffs' Motion to Stay the Execution of Any Award of Fees and Costs.

s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated: February 4, 2015

20